IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STACI D. HEARLSON,                )
                                  )
                    Plaintiff,    )
                                  )
vs.                               )      Case No. 06-1120-JTM
                                  )
MICHAEL J. ASTRUE,[1]             )
Commissioner of                   )
Social Security,                  )
                                  )
                    Defendant.    )
_____ )


RECOMMENDATION AND REPORT


    This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties and has been

referred to this court for a recommendation and report.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

_____

    [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II. History of case

On December 7, 2005, administrative law judge (ALJ) George

M. Bock issued his decision (R. at 18-28).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 26, 2003 (R. at 19).  At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia, obesity, major depressive disorder (recurrent, moderate severity), a borderline personality disorder and mild chronic obstructive pulmonary disease (COPD).  The ALJ further determined that plaintiff's "sleep problems" are not medically determinable (R. at 19).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past relevant work as an office clerk.  In the alternative, at step five, the ALJ found that plaintiff could perform other light and sedentary work that exists in the national economy (R. at 26-27).  Therefore, the ALJ concluded that plaintiff was not disabled.

**III.  Did the ALJ err in his evaluation of the opinions of Dr. Allen and his assessment of plaintiff's social functioning?**

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Castellano v. Secretary of</u>

5

Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating
physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083
(10th Cir. 2004).  A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good
reasons in his decision for the weight he ultimately assigns the
opinion.  If the ALJ rejects the opinion completely, he must then
give specific, legitimate reasons for doing so.  Watkins, 350
F.3d at 1301.

An ALJ must evaluate every medical opinion in the record,
although the weight given to each opinion will vary according to
the relationship between the disability claimant and the medical
professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir.

2004).  In the determination of issues reserved to the
Commissioner, such as opinions regarding: whether an impairment
meets or equals a listing, plaintiff's RFC, whether a plaintiff
can do past relevant work, how age, education, and work
experience apply, and whether a plaintiff is disabled, treating
source opinions are not entitled to special significance or
controlling weight.  <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source
Opinions on Issues Reserved to the Commissioner), 1996 WL 374183,
at *2.  However, even on issues reserved to the Commissioner,
including the RFC determination and the ultimate issue of
disability, opinions from any medical source must be carefully
considered and must never be ignored.  Social Security Ruling
(SSR) 96-5p, 1996 WL 374183 at *2-3.

Dr. Molly Allen, a psychologist, performed a consultative
examination on the plaintiff on December 19, 2003.  Her findings
included the following:

> CREDIBILITY: **Although she tends to be fairly
> dramatic in her overall presentation, Ms.
> Hearlson appears to be a credible historian
> and the reports she gave this psychologist
> are consistent with other available
> information**. Ms. Hearlson qualifies for a
> diagnosis on Axis I of Major Depressive
> Disorder, recurrent, moderate severity. On
> Axis II, she has a diagnosis of Borderline
> Personality Disorder. **She also has some
> strong features of Schizotypal Personality
> Disorder because of the difficulties with the
> complaints of some psychosis and also the
> social problems**. Overall, her characteristic
> sort of style is somewhat attention seeking,

7

dramatic and self-defeating, qualifying her
for the Borderline Personality Disorder
diagnosis.

SUMMARY: Ms. Hearlson certainly is bright
enough to be able to manage most tasks on a
typical job. **Her main difficulty is that she
has very disturbed social skills, and she
would have a hard time getting along with
coworkers, dealing with the public and
particularly dealing with supervisors**. She is
able to understand and carry out simple
instructions. Her attention and concentration
are generally adequate for most tasks. She
can adapt to the productivity and punctuality
standards on a typical job, despite her
physical problems. She is fairly persistent
at the tasks that she is capable of, but it
should be noted that when asked what she
would like to do for a living, she indicates
that she usually draws a blank, and that she
has gone through the phonebook looking for
jobs and she cannot really think of anything
that she would really like to do, so **her
motivation to work may be suspect**. It does
appear that she is able to manage financial
resources at her disposal.

(R. at 230, emphasis added).

The ALJ summarized the report of Dr. Allen, including the

following:

**Although the undersigned notes that Ms. Allen
referred to some very disturbed social skills
on the part of claimant which would result in
problems getting along with co-workers,
dealing with the public and particularly with
supervisors, claimant's credibility at the
evaluation also came into question**.
Specifically, Ms. Allen noted that claimant
tended to be fairly dramatic in her overall
presentation. She also noted that claimant's
characteristic sort of style was somewhat
attention-seeking, dramatic and
self-defeating, qualifying her for the

> borderline personality disorder diagnosis.
> Additionally, when asked what she would like
> to do for a living, claimant indicated that
> she usually drew a blank, and had gone
> through the phonebook looking for jobs, but
> could not really think of anything that she
> really liked to do. Accordingly, Ms. Allen
> noted that claimant's motivation to work
> might be suspect (Exhibit 5-F, page 58).

(R. at 23, emphasis added).

In the very next paragraph of his decision, the ALJ then
stated the following:

> **The undersigned notes that there is nothing
> in the record**, including the activities
> questionnaires completed by claimant,
> claimant's mother, and claimant's brother
> (Exhibits 4-E, 5-E, and 8-E), **which points to
> any significant socialization problems for
> claimant.**  She was apparently able to perform
> the customer service representative job and
> relate well with her co-workers at SBC for
> many years, and according to a mental health
> treatment note of September 2004, claimant
> was doing volunteer work at her child's
> school (Exhibit 14-F, page 0198). Treatment
> records also note that claimant has denied
> any excessive irritability, thoughts of
> self-harm or homicidal ideations (Exhibit
> 14-F). Furthermore, there are no police
> reports of any violence or altercations with
> people on the part of claimant. Accordingly,
> the undersigned finds nothing in the evidence
> of record which indicates that claimant would
> be markedly limited with respect to
> maintaining social functioning.

(R. at 23, emphasis added).

The ALJ did acknowledge the findings of Dr. Allen that she
has very disturbed social skills, and would have a hard time
getting along with coworkers, dealing with the public and

9

particularly dealing with supervisors.  The ALJ then noted that plaintiff's credibility came into question during the evaluation. However, Dr. Allen, in her credibility findings, stated that although plaintiff tends to be fairly dramatic in her overall presentation, Dr. Allen concluded that plaintiff was a "credible historian" and further found that plaintiff's reports were consistent with other available information (R. at 230).  The ALJ never mentioned these credibility findings by Dr. Allen.

After discussing Dr. Allen's report, the ALJ then stated that nothing in the record points to "any significant socialization problems" for the plaintiff (R. at 23).  In light of Dr. Allen's report, which found very disturbed social skills, and an opinion that she would have a hard time getting along with coworkers, dealing with the public, and particularly dealing with supervisors, such a statement is inexplicable.  Furthermore, Dr. Allen did not question plaintiff's credibility during the evaluation, but found her to be a credible historian and found that the information she gave was consistent with other available information.

The ALJ also stated that the questionnaires by plaintiff, her mother, and her brother did not point to any significant socialization problems.  However, the questionnaire by plaintiff's brother stated the plaintiff has problems getting along with family, friends, neighbors or others, noting that her

10

pain wears on personal relationships and has lessened her social interactions.  He stated that her condition impacts her ability to get along with others, and that she is cranky and limited in focus.  He also stated that she does not deal with well with authority figures (R. at 96-97).  Plaintiff's mother indicated in her questionnaire that plaintiff does not spend time with others, has problems getting along with others because she is grumpy most of the time and has little to no social activity.  Her mother also indicated that her condition impacts her ability to get along with others, and that the landlord tries to avoid her (R. at 105-106).  Finally, in plaintiff's questionnaire, plaintiff indicated that she has problems getting along with others, stating: "I've been told I don't have any people skills.  And I would rather be alone" (R. at 125).  Therefore, contrary to the statement by the ALJ that "nothing in the record" points to any significant socialization problems for plaintiff, the report of Dr. Allen, and the questionnaires by plaintiff and family members clearly contradict this finding by the ALJ.

The ALJ concluded by stating that "nothing in the evidence of record" indicates that plaintiff would be markedly limited with respect to maintaining social functioning (R. at 23).  However, Dr. Allen stated that plaintiff had "very disturbed social skills."  Furthermore, a report dated August 25, 2005 by Dr. Porter and Sally Gerlach, LMSW, specifically stated that

plaintiff had "marked difficulties in maintaining social functioning" (R. at 403, 414).  Although the ALJ later discussed and discounted their report,[2] the fact that they offered this specific opinion clearly contradicts the statement of the ALJ that nothing in the evidence of record indicates that plaintiff is markedly limited with respect to maintaining social functioning.

Defendant argues that the RFC findings of the ALJ acknowledge her limitations in social functioning by including a limitation of no work with the general public (R. at 26). Although not included in his decision, the ALJ included in his hypothetical question to the vocational expert (VE) that plaintiff had moderate limitations in her ability to: (1) interact with the general public, (2) the ability to accept instructions and respond appropriately to criticism from supervisors, (3) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral concerns, and (4) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (R. at 438, 268).  The ALJ then added to the hypothetical question that she have no contact with the general public (R. at 438).  With these limitations, the VE testified that plaintiff could perform past

_____

[2]The evaluation of the opinions of Dr. Porter and Ms. Gerlach by the ALJ will be discussed later in this report and recommendation.

work as an office clerk, and other work in the national economy (photo copier, laundry folder, housekeeper, charge account clerk) (R. at 438-439).  The ALJ adopted this testimony by the VE in his decision (R. at 26).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of

13

Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When
the ALJ has failed to comply with SSR 96-8p because he has not
linked his RFC determination with specific evidence in the
record, the court cannot adequately assess whether relevant
evidence supports the ALJ's RFC determination.  Such bare
conclusions are beyond meaningful judicial review.  Brown v.
Commissioner of the Social Security Administration, 245 F.
Supp.2d 1175, 1187 (D. Kan. 2003).

Although the ALJ's RFC findings (including those contained
in the hypothetical question) were not linked to specific
evidence in the record (R. at 26), the ALJ included moderate
limitations in plaintiff's ability to deal with supervisors, co-
workers and the public, and further limited plaintiff to no
contact with the public.  The question for the court is whether
the ALJ's RFC findings sufficiently incorporate the medical
opinions of Dr. Allen.  The RFC findings limited plaintiff to no
contact with the public, but otherwise found only moderate
limitations in plaintiff's ability to deal with supervisors and
co-workers.  However, Dr. Allen found that plaintiff had very
disturbed social skills, and would have a hard time getting along
with co-workers, the public, and "particularly dealing with
supervisors" (R. at 230).  Inexplicably, in light of Dr. Allen's
opinion that her greatest problem would be dealing with
supervisors, the ALJ's RFC findings place a greater restriction

14

on her contact with the general public than with supervisors.
The court cannot determine the weight that the ALJ accorded to
Dr. Allen's opinions when making his RFC findings.  The ALJ erred
by failing to provide a narrative discussion setting forth the
weight he accorded to Dr. Allen's opinions, and why he placed a
greater restriction on her contact with the general public than
with supervisors.  Therefore, this case will need to be remanded
in order to properly consider Dr. Allen's opinions and the weight
they should be accorded when making RFC findings for the
plaintiff.

**IV.  Did the ALJ err in his evaluation of the opinions of Dr.
Porter and Ms. Gerlach?**

On August 25, 2005, the names of Dr. Porter, a psychiatrist,
and Sally Gerlach, LMSW, treatment providers for the plaintiff,
are listed on a questionnaire regarding plaintiff's disability
claim (R. at 404-410, 402-403, 411-422).  The list of exhibits
has this questionnaire under exhibits 16F (R. at 402-403), 17F
(R. at 404-410), and 18F (R. at 411-422) (R. at 7).  However, a
review of the pagination of the questionnaire makes clear that it
is one document, 21 pages in length, in the following order: R.
at 404-410, 402-403, 411-422.  Dr. Porter and Ms. Gerlach are
listed on the 1st page of the form, and it is signed by Ms.
Gerlach on the last page of the form.   Inexplicably, the ALJ and
the Commissioner treated the questionnaire as three separate

exhibits, and deemed Exhibit 17 (R. at 404-410) as a report from Dr. Porter and Ms. Gerlach, and Exhibit 18 (R. at 411-422) as a separate report from Ms. Gerlach (R. at 24).  The ALJ then discounted both the opinion of Dr. Porter in Exhibit 17 and the opinion of Ms. Gerlach in Exhibit 18 (R. at 24).  However, in light of the fact that the ALJ erroneously dealt with the one questionnaire as three separate exhibits from different treatment providers, the case shall be remanded in order for the ALJ to consider this questionnaire as one document containing the names of Dr. Porter and Ms. Gerlach on the first page of the questionnaire and signed by Ms. Gerlach on the last page.

The questionnaire opined that plaintiff is unable to work primarily due to mental impairments (R. at 406-407), and that plaintiff had a number of marked difficulties or restrictions, including a marked difficulty in maintaining social functioning (R. at 403, 414).  This finding should not be examined in isolation, but in light of the opinion of Dr. Allen that plaintiff has very disturbed social skills, and would have a hard time getting along with coworkers, dealing with the public, and particularly dealing with supervisors.  The findings of Dr. Allen, Dr. Porter, and Ms. Gerlach should also be considered in light of the opinions expressed by plaintiff, her mother, and her brother regarding plaintiff's social functioning.

The ALJ found that Dr. Porter's opinions are unsupported by

any mental status examination findings (R. at 24).  However, the records from Family Consultation Service indicate on 17 occasions that plaintiff had an "impairment in social, family, academic or work functioning" (R. at 363-379).  Furthermore, a report from April 6, 2004 indicated a GAF score of 50 (R. at 361-362), and a report from June 16, 2005 indicated a GAF score of 40 (R. at 355-356).[3]  These GAF scores were also not mentioned by the ALJ in his decision.  Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure or irrelevant), **OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work...).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

keep a job.  For this reason, such a GAF score should not be ignored.  Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

The ALJ also found that Ms. Gerlach is not an acceptable medical source and gave no weight to her opinion (R. at 24). Although the ALJ is correct that she is not an acceptable medical source, 20 C.F.R. 404.1513(a), the ALJ failed to recognize that she is an "other" medical source who can be used to determine the severity of an impairment and how it affects the claimant's ability to work.  Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003); 20 C.F.R. 404.1513(d); SSR 06-03p, 2006 WL 2329939 at *2.  Therefore, on remand, the ALJ shall consider the opinions of Ms. Gerlach as an "other" medical source, and consider her opinions in light of the evidence from other acceptable medical sources who have treated and/or examined the plaintiff, and in accordance with SSR 06-03p (considering opinions and other evidence from sources who are not "acceptable medical sources").

**V.  Did the ALJ err in his evaluation of the opinion of Dr. Pay?**

In a medical report dated February 10, 2004, Dr. Pay, plaintiff's treating physician, assessed plaintiff with fibromyalgia, depression, hypersomnia, and back and neck pain. Dr. Pay stated that "it seems like typically the patient will not be able to work and I filled out the SRS paperwork for her" (R. at 316).  The ALJ stated the following in regards to this opinion

by Dr. Pay:

>Overall, the undersigned finds this opinion
>of Dr. Pay not supported by the totality of
>the medical evidence, as previously
>discussed, or claimant's sporadic medical
>treatment, or her demonstrated level of
>functioning.  Moreover, it appears that he
>was merely assisting claimant with obtaining
>State assistance.  Accordingly, his opinion
>is being accorded little weight.

(R. at 25).

In the case of <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1253

(10th Cir. 2002), the court held as follows:

>Finally, the ALJ rejected Dr. Luc's
>assessment because he felt it signified "a
>certain advocacy posture." App. vol. II, at
>24. This holding, too, was error. We held
>years ago that an ALJ's assertion that a
>family doctor naturally advocates his
>patient's cause is not a good reason to
>reject his opinion as a treating physician.
><u>See</u> <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th
>Cir.1987). Here, as in <u>Frey</u>, the ALJ's
>rejection of Dr. Luc's assessment on the
>basis of advocacy is a mere "conclusory
>statement" that contradicts our rule on the
>weight to be given the report of a treating
>physician, "without suggesting some
>exceptional basis in the facts of this case."
><u>Id</u>. Unlike the ALJ, we do not find it
>exceptional that the treatment team for a
>patient in a transitional living program
>assists the patient in making her social
>security disability claim.

Similarly, in the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116,

1121 (10th Cir. 2004), the court held:

>The ALJ also improperly rejected Dr.
>Hjortsvang's opinion based upon his own
>speculative conclusion that the report was
>based only on claimant's subjective

19

complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

As the above cases make clear, the fact that Dr. Pay was assisting plaintiff with obtaining State assistance is not a legitimate basis for discounting his opinion.  In fact, as noted in McGoffin, it is not at all exceptional for a treatment provider to assist the patient in making her social security disability claim.

The ALJ discounted Dr. Pay's opinion because of plaintiff's sporadic medical treatment.  However, the records from Wichita Clinic, where Dr. Pay saw the plaintiff, show 38 contacts by the Clinic with the plaintiff from January 9, 2004 through July 18, 2005 (R. at 285-321).  This hardly appears to be "sporadic" medical treatment.

The ALJ also discounted Dr. Pay's opinion because it was not

20

supported by the totality of the medical evidence.  However, no
treating or examining professional opined that plaintiff was not
disabled, while other treating professionals (Dr. Porter/Ms.
Gerlach) found plaintiff disabled due to physical and mental
impairments.  Therefore, on remand, the opinions of Dr. Pay will
need to be reexamined in light of all the medical evidence,
including the opinions of other treatment providers.

**VI.  Did the ALJ err in his credibility analysis?**

The framework for the proper analysis of evidence of pain is
that the Commissioner must consider (1) whether claimant
established a pain-producing impairment by objective medical
evidence; (2) if so, whether there is a "loose nexus" between the
proven impairment and the claimant's subjective allegations of
pain; and (3) if so, whether considering all the evidence, both
objective and subjective, claimant's pain is in fact disabling.
Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson
v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v.
Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment
is reasonably expected to produce some pain, allegations of
disabling pain emanating from that impairment are sufficiently
consistent to require consideration of all relevant evidence.
For example, an impairment likely to produce some back pain may
reasonably be expected to produce severe back pain in a
particular claimant.  Luna, 834 F.2d at 164.  Symptoms can

sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.  Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.  Luna, 834 F.2d at 165.  The absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. When determining the credibility of pain testimony the ALJ should consider the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  Thompson, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and

22

not just a conclusion in the guise of findings. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in <u>Kepler</u>. <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. <u>White</u>, 287 F.3d at 909-910.

Because this case is being remanded in order for the ALJ to properly consider the medical evidence, as noted above, the ALJ

23

shall also conduct a new credibility analysis in light of the medical evidence from the treating and examining medical sources. However, the court will address certain specific issues raised by the plaintiff which need to be addressed when this case is remanded.

First, the ALJ stated that plaintiff did not testify that she left her last job because of her medical condition, but rather she was terminated from the job after being off on disability leave for a back injury; thus, the ALJ concluded that she did not leave work because of her medical condition (R. at 20). Plaintiff testified that she was terminated from her job after returning from disability (R. at 427). However, the record is silent as to the basis for the termination. If she was terminated due to her medical condition and/or disability, that would support her credibility. Therefore, on remand, the ALJ should attempt to ascertain the basis for the termination.

Second, the ALJ stated that plaintiff "noted no problems caring for her personal needs" (R. at 20). This is a clear misrepresentation of the record. Plaintiff answered "yes" to the question of whether her condition affects her ability to care for her personal needs such as bathing, grooming, dressing, etc. Plaintiff specifically stated that it causes increased pain to bathe and dress/undress, and to sit still or stand for more than a few minutes, like when showering (R. at 129).

24

Third, the ALJ relied on plaintiff's report that she was doing volunteer work at her child's school as of September 2004 to demonstrate plaintiff's ability to engage in physical activity and to socialize (R. at 21, 23). However, the ALJ failed to mention that at the August 3, 2005 hearing plaintiff testified that she had volunteered the previous year at the school, but was not able to continue doing it by the end of the year, and because of the way she now felt she would not be doing it this year. She specifically noted that her pain had increased since the last school year (R. at 434).

Fourth, the ALJ noted that although plaintiff testified to virtually no physical activity due to pain, a treatment note from June 2005 indicated plaintiff was moving furniture and other stuff from one storage facility to another (R. at 21). However, although the medical record does note that plaintiff had been moving furniture and other stuff, the ALJ failed to mention that the same medical record also stated that plaintiff reported that this activity had caused a flare up of her fibromyalgia pain in her shoulders, neck and back, and that despite taking six Percocet pills per day, it does not seem to be helping as much (R. at 287). Furthermore, the statement of the ALJ that plaintiff testified to "virtually no physical activity during the day" (R. at 21) is not accurate. Plaintiff testified that she may have to lie down from 15 minutes to several hours due to pain

and fatigue (R. at 429-430), and that she tries to lay down or
sit with as little physical activity as possible that involves
her arms because the pain increases (R. at 434).  However,
plaintiff also testified that she gets her son up and ready for
school, and then takes him to school (R. at 433-434), and still
does some grocery shopping (R. at 435).  The ALJ had previously
noted in the decision that plaintiff provided care for and played
with her son (R. at 21).

Fifth, the ALJ relies on the lack of certain types of
medical treatment, including physical therapy, pain management,
epidural injections, emergency room visits, or inpatient
hospitalizations to discount her credibility (R. at 21).  In the
case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004),
the ALJ noted that the claimant did not require an assistive
device for his neck.  The court held that there is no evidence
that any physician recommended such a device or suggested that
one would have provided any pain relief.  The court stated that
an ALJ is not free to substitute his own medical opinion for that
of a disability claimant's treating doctors.

In this case (Hearlson), the ALJ cited to no medical
evidence that the above-mentioned treatments would be appropriate
in plaintiff's case.  In the absence of any medical evidence to
support this conclusion by the ALJ, the ALJ overstepped his
bounds into the province of medicine.  <u>Miller v. Chater</u>, 99 F.3d

972, 977 (10th Cir. 1996).  The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any evidence that these various modes of treatment were recommended, or any medical opinion that such treatments would have lessened her limitations or provided pain relief, the ALJ erred by relying on the lack of these treatments when weighing plaintiff's credibility.

Sixth, in regards to plaintiff's physical impairments, the ALJ found that "nothing" in the medical record indicates that they are so disabling as to prevent her from working.  In support of that finding, the ALJ stated that plaintiff's physical examinations and diagnostic findings of record have been essentially unremarkable with the exception of pain complaints (R. at 25).  However, the report from Dr. Porter and Ms. Gerlach, who noted plaintiff's fibromyalgia, stated that her physical ailments, including chronic pain, impact her mental health and prevent her from working (R. at 404, 406).  Dr. Pay, also opined that plaintiff could not work after noting her pain from fibromyalgia (R. at 316).

In addition, the ALJ's reliance on unremarkable physical examinations and diagnostic findings is not supported by the

27

record.  First, Dr. Pay consistently diagnosed fibromyalgia (R. at 287, 290, 292, 298, 303, 304, 307, 310, 315, 316, 317, 319). On January 21, 2004, during a rheumatological examination of the plaintiff, Dr. Pay found numerous muscle pain and fibrous tissue trigger points of the plaintiff which he concluded was very consistent with fibromyalgia (R. at 319).  As courts have noted repeatedly, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity.  Gilbert v. Astrue, 2007 WL 1068104 at *4 (10th Cir. Apr. 11, 2007); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004);  Munsinger v. Barnhart, D. Kan. No. 01-1332-MLB, report and recommendation at 21, July 22, 2002; affirmed by district court Aug. 26, 2002);  Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition.  Priest, 302 F. Supp.2d at 1213.

Finally, the ALJ also found that "nothing" in the medical records showing disabling mental symptoms which would preclude

employment (R. at 22).  However, as noted above, the
questionnaire from Dr. Porter and Ms. Gerlach specifically opine
that plaintiff has disabling mental symptoms, and Dr. Allen
opined that plaintiff has "very disturbed" social skills.
Therefore, this finding by the ALJ is not supported by the
record.  Furthermore, the ALJ stated that plaintiff had "very
sporadic" mental health treatment (R. at 22).  The ALJ also
discounted the opinions of Dr. Porter because of plaintiff's
"sporadic mental health treatment" (R. at 24).  However, the
records from Family Consultation Services, where plaintiff
received mental health treatment, state that plaintiff had 17
individual sessions and 7 medical checks from April 6, 2004
through November 29, 2004 (R. at 355).  Plaintiff reported on
June 16, 2005 that she could not afford to attend appointments
any longer because she was losing her medical card (R. at 355).
The frequency of this treatment was erroneously not mentioned by
the ALJ, and it does not support a finding of sporadic mental
health treatment, at least during 2004.  Therefore, on remand,
the frequency of this treatment must be taken into consideration
by the ALJ.

    In summary, upon remand, the ALJ will need to reevaluate
plaintiff's credibility in light of the numerous errors by the
ALJ in his credibility analysis and in order to give proper
consideration to the opinions of the treating and examining

medical sources.

**VII.  Did the ALJ err in his finding that plaintiff's sleep problems were not medically determinable?**

The burden of proof at step two is on the plaintiff.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[4]  <u>Williams</u>, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments

---

[4]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

The ALJ found that plaintiff's sleep problem is not medically determinable (R. at 19).  However, a report from the Sleep Medicine Center of Kansas indicates that plaintiff has severe difficulty initiating and maintaining sleep, most likely secondary to severe depression, that plaintiff's fibromyalgia likely has a negative impact on sleep depth and continuity, and also found elements of inadequate sleep hygiene (R. at 325). This represents clear and uncontroverted medical evidence of a

31

sleep disorder.

However, later in his decision, the ALJ noted other aspects of this medical report, including plaintiff's report that "she tends to be tired but not somnolence during the day.  She does not doze off inappropriately.  Does not take naps" (R. at 324, 22).  Plaintiff also indicated that she has never been told that she snores or has sleep apnea (R. at 324, 22).  This evidence does not pertain to whether plaintiff has a medically determinable sleep problem, but is relevant to the issue of whether plaintiff's sleep problem is a severe impairment, i.e., does it have more than a minimal effect on her ability to work. Therefore, on remand, the ALJ shall address the question of whether plaintiff's sleep problem is a severe impairment in light of the medical evidence.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on June 20, 2007.

                         s/John Thomas Reid
                         JOHN THOMAS REID
                         United States Magistrate Judge